**Donald WOLF, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CIV–84–86C.

United States District Court,
W.D. New York.

June 27, 1985.

Wattenberg & Isaac (Mark H. Wattenberg, of counsel), Olean, N.Y., for plaintiff.

Salvatore R. Martoche, U.S. Atty. (C. Donald O'Connor, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

Plaintiff Donald Wolf worked as a truck driver for 21 years until he stopped working in October of 1971. He has not been employed since that time. Plaintiff has an eighth-grade education and was 54 years old at the time of the hearing.

Plaintiff filed an application for disability insurance benefits on October 16, 1974. That application was granted for a period of disability beginning in September of 1974. Plaintiff's benefits were later terminated by the Secretary as of January of 1982, at which time he was said to have recovered from his disability caused by cirrhosis of the liver, pancreatitis, and chronic alcoholism. The date of the Secretary's decision terminating plaintiff's benefits was September 27, 1982. There is no evidence that plaintiff ever appealed the decision beyond the Appeals Council, which declined to review it. Instead, plaintiff made the instant application on January 28, 1983. He also applied for supplemental security income benefits on that date.

The decision of the Secretary that plaintiff was no longer disabled from January of 1982 through September 27, 1982, is *res judicata*. The decision of this court applies only to plaintiff's condition after September 27, 1982.

With regard to plaintiff's most recent application, the Administrative Law Judge [ALJ] found on September 30, 1983, that plaintiff had not been engaged in substantial activity since October of 1971. He found that plaintiff was not suffering from an Appendix 1 impairment but that plaintiff could not resume his former work. However, the ALJ concluded that plaintiff had the residual functional capacity to do light work and was not disabled under Appendix 2, Rule 202.11, Subpart P, 20 C.F.R. Part 404.

The sole issue raised by plaintiff on this appeal is the failure of the ALJ to determine whether plaintiff is addicted to alcohol and whether he can control its use.

From the record, it is apparent that plaintiff is an alcoholic. Both doctors so diagnosed him (Tr., pp. 260, 319, 324, 333, 350). Alcoholism in and of itself, however, is not necessarily disabling. Under the Social Security Administration regulations, an addiction to alcohol or drugs does not automatically indicate a finding of disability:

(e) *Addiction to alcohol or drugs.* If you have a condition diagnosed as addiction to alcohol or drugs, this will not, by itself, be a basis for determining whether you are, or are not, disabled. As with any other medical condition, we will decide whether you are disabled based on symptoms, signs, and laboratory findings.

20 C.F.R. § 404.1525(e).

Addiction to alcohol can, in certain circumstances, be of such severity as to meet the listings of Appendix 1. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. The requirements of section 12.04 are quite specific and are not met by the evidence in this record. Although the ALJ did not elaborate on his finding that plaintiff had no Appendix 1 impairment, this finding is supported by substantial evi-

dence. Even when an addiction to alcohol does not meet the listings of Appendix 1, it can still be disabling *if* it, alone or combined with other causes, prevents a person from engaging in substantial gainful activity. *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir.1981).

█ Physical damage caused by prior alcohol abuse can be so severe as to be disabling under the Act. *Singletary v. Secretary of Health, Education and Welfare*, 623 F.2d 217, 220 (2d Cir.1980). Serious alcohol-induced personality disorders, as described in Appendix 1, can be disabling. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982). Other alcohol-related mental impairments, even if they do not equal an Appendix 1 impairment, can be disabling if they preclude gainful activity.

█ Once a person is found to have an alcohol-related condition which prevents him from engaging in substantial gainful activity, he cannot be denied benefits simply because he continues to drink. *Adams v. Weinberger*, 548 F.2d 239, 242–43 (8th Cir.1977). "[E]mphasis should be placed on whether the claimant is addicted to alcohol and as a consequence has lost the voluntary ability to control its use." *Id.* at 244.

When a person is found to have a disability related to alcohol abuse, the ALJ must go a step further:

[I]f there is a continuing interrelationship between the excess consumption of alcohol and the disability, such that termination of the former will end the latter, the issue for the Secretary is whether the claimant has lost the voluntary ability to control his drinking.

*Rutherford* at 62.

█ In this case, the ALJ found that plaintiff was not under a disability and was able to engage in substantial gainful activity. In urging remand based solely on the failure of the ALJ to address plaintiff's ability to control his drinking, plaintiff bypasses the first step in the analysis. It must first be determined whether, in spite of plaintiff's alcoholism, the ALJ's finding that he is not disabled is supported by substantial evidence. In this case, the court concludes that further clarification and consideration is required, and remands for the purpose.

The majority of plaintiff's physical impairments are related to plaintiff's alcohol consumption. In addition to alcoholism, he has been diagnosed as suffering from chronic pancreatitis, possible cirrhosis of the liver, arteriosclerotic heart disease, coronary insufficiency, angina, and anxiety neurosis.

Plaintiff's pancreatitis is a severe condition. He has had acute attacks in the recent past, and he now displays chronic pancreatitis (Tr., pp. 319, 354). His pancreas shows considerable calcification (Tr., p. 358). Additionally, his platelet count and his white cell count were far below normal, presumably due to liver damage (Tr., p. 358). Both these conditions were, as can be gleaned from the record, caused by alcohol abuse and are made worse by alcohol consumption.

The ALJ stated that plaintiff's chest x-rays and EKGs were normal. He then added the cryptic comment: "[H]is pancreatitis is associated with his drinking." (Tr., p. 13.) He nowhere discussed any limitations which plaintiff's pancreatitis (and liver damage) impose. From this comment, the court has considerable doubt as to whether the ALJ found that plaintiff's pancreatitis was not, alone or in combination with his other impairments, a disabling condition *or* whether he considered this to be a disabling condition but found plaintiff not disabled due to its relationship to plaintiff's continued drinking.

If the ALJ did the latter, as seems likely, he was then under a duty to determine whether plaintiff could control his drinking, which he did not do. *Adams*, 548 F.2d at 242–44.

Furthermore, the ALJ failed to consider the effect of plaintiff's repeated hospitalizations on his ability to engage in substantial gainful activity. The ALJ found plaintiff capable of "light work." No explanation is given for this conclusion. In any

event, a classification of "light work" is clearly a classification limited to exertional limitations and does not account for his repeated hospital stays.

According to the record, plaintiff was hospitalized at least six times between November of 1982 and August of 1983. He was in the hospital November 3–10, 1982 (Tr., p. 324); sometime in January, 1983 (Tr., p. 46); February 4–7, 1983 (Tr., p. 316); February 23–March 2, 1983 (Tr., p. 319); May 13–21, 1983 (Tr., p. 343); and July 25–August 5, 1983 (Tr., p. 354).

It seems evident to the court that six hospitalizations, most for more than one week at a time, within a nine-month period would have a severe impact on plaintiff's ability to perform substantial gainful activity, if not altogether preclude it (Tr., p. 50).

This is especially true for plaintiff, who was already 54 years old at the time of the hearing and has only an eighth-grade education. This last relevant work was in 1971, until which time he had worked for 21 years as a truck driver.

On remand, the Secretary shall consider the effects of plaintiff's pancreatitis and frequent hospital stays on his ability to engage in substantial gainful activity.

It may be that plaintiff is disabled, in any event, whether he drinks or not. Of course, if the Secretary determines that plaintiff has a disability and there is a continuing interrelationship between the consumption of alcohol and the disability, such that termination of the alcohol consumption will end the disability, the issue is whether plaintiff has lost the ability to control his drinking. *Rutherford*, 685 F.2d at 62.

The Secretary urges that plaintiff's own testimony demonstrates that he has not lost the voluntary ability to stop drinking. For instance, plaintiff testified that he last drank the Tuesday before the hearing, and

that only two bottles of beer had made him ill (Tr., p. 32). Plaintiff also stated that while he used to drink heavily, he now only takes a few drinks and usually does not get drunk (Tr., p. 47). Although the ALJ referred to some of this testimony, he did not comment upon it.

Simply because a claimant denies the severity of his drinking problem and has had a period of recovery in the past does not indicate that he can control his drinking. *Ferguson*, 641 F.2d at 249. Even when a person claims he likes to drink and declines help, such as plaintiff has (Tr., p. 323), the inquiry is not at an end. An alcoholic's denials often betray his addiction. It must be determined whether he has lost the voluntary ability to stop drinking. *Adams*, 548 F.2d at 245.

Dr. Hwang found that plaintiff had a history of alcohol abuse and diagnosed plaintiff as a chronic alcoholic. He noted that plaintiff had alcohol on his breath during his March 15, 1983, office visit (Tr., p. 333).[1] Treating physician Shaffer consistently diagnosed plaintiff as suffering from alcoholism (Tr., pp. 319, 324, 350). At least three of plaintiff's hospitalizations were for bouts of alcoholism (Tr., pp. 319, 341, and 354). In the most recent episode, plaintiff again had the DTs and was placed on Haldol, after which he "quieted down and was manageable."

A review of the record in this case indicates that the Secretary equates alcoholism with the amount of alcohol ingested or the frequency with which a person drinks. Since plaintiff claims he now only occasionally drinks a few beers, the Secretary seems to conclude that he is no longer an alcoholic. As discussed earlier, a conclusion that someone is not an alcoholic and is in control of his drinking must be based on more than his own assessment of his problem. Moreover, even if plaintiff's own as-

---

1. In an earlier examination of plaintiff performed January 22, 1982, Dr. Hwang took plaintiff's word that he had quit drinking in 1979 (Tr., p. 313). Again, plaintiff's own report of his condition is, by itself, not necessarily reliable. In a hospital report for plaintiff's November

3–10, 1982, stay, Dr. Shaffer noted that plaintiff had admitted to drinking again, and the doctor speculated that he had been drinking for a long period of time. When Dr. Hwang next examined plaintiff in March of 1983, chronic alcoholism was his primary diagnosis (Tr., p. 333).

sessment of his drinking habits were accepted, this in itself does not mean that plaintiff can control his drinking. During argument before this court, the Secretary stressed that plaintiff's hospitalizations resulted from his drinking only one or two beers. As the Secretary noted, his physical condition has so deteriorated from years of drinking that even small amounts of alcohol can lead to disaster. Most of his many hospitalizations were related to his consumption of alcohol.

If a man cannot avoid alcohol, even when it causes stomach pain and nausea so severe that it frequently necessitates hospitalization for several days, there is a strong basis for concluding that he cannot control his drinking. A man need not be regularly intoxicated to be an alcoholic. That he may not drink daily or in great quantity does not mean his addiction is under control.

On remand, the Secretary shall, if such a finding is necessary, determine whether plaintiff has lost the ability to voluntarily stop drinking. In this regard, plaintiff has requested that a consultive psychiatric examination be obtained. This may prove useful in making a proper determination on remand. *See Rutherford,* 685 F.2d at 61. Under 20 C.F.R. § 404.1517, the Secretary has the power to order a physical or mental examination. If either party wants a psychiatric examination, the Secretary shall order one.

This case is remanded for proceedings consistent with this decision.

So ordered.