Ollie SIMMONS, Jr., Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CIV–80–1157C.**

United States District Court,
W.D. New York.

Nov. 19, 1985.

Neighborhood Legal Services, Inc. (Keith A. Morgenheim, of counsel), Buffalo, N.Y., for plaintiff.

Salvatore R. Martoche, U.S. Atty. (Kathleen M. Mehltretter, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

This action is before me after a remand for a new hearing consistent with *Campbell v. HHS*, 665 F.2d 48 (2d Cir.1981), *reversed*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1982). The case was remanded March 24, 1982.

Once again, the court must address the problem which was recently raised in *Wolf v. Secretary*, 612 F.Supp. 289 (W.D.N.Y. 1985). In that case, plaintiff, an alcoholic, was denied benefits because of a finding by the Secretary that he was not disabled, so no assessment was made of his ability to control his drinking. That case was remanded to the Secretary for reconsideration and further findings. Here, although the Secretary found plaintiff to be an alcoholic, she determined that he had retained the voluntary ability to control his drinking.

Although in this case the Secretary found that plaintiff's present abstinence indicated that he had always had the ability to control his drinking, the remarks made by the United States Court of Appeals for the Fifth Circuit in *Ferguson v. Schweiker*, 641 F.2d 243, 249 (5th Cir.1981), have particular force:

The fact that Ferguson may have undergone what was formerly thought to be successful detoxification *some time ago* does not present evidence that he *now* has the ability to control his drinking. Indeed, the fact that appellant has been hospitalized more than once as a result of his drinking problem ... suggests that while past detoxification as apparently thought to have been success-

ful ..., the roots of the disease remained deep within appellant. One of the more tragic aspects of alcoholism is that the hopes spawned by an apparently successful effort to "dry out" may in a moment be dashed against the rocks of a whiskey glass.... Hence, the reports of appellant's past detoxification provide little guidance concerning his present ability to control his alcoholism. The conclusory assertion that because a person has once stopped drinking, he can again do so ... is unwarranted and shows an insensitivity to the problems faced by alcoholics.

*Ferguson, supra* at 249.

In this case, on January 4, 1982, plaintiff was admitted to a hospital, during which time his left leg was amputated above the knee. On remand, the Administrative Law Judge [ALJ] found that plaintiff was disabled and awarded benefits beginning January 4, 1982. The ALJ found, however, that plaintiff was not disabled from the alleged onset date of December 4, 1978, through January 4, 1982. There was evidence before the Secretary that after the operation, plaintiff stopped drinking. It appears to be the Secretary's theory that if he could stop drinking at that time, he could have done so during the period from 1978 through January of 1982. Plaintiff in this action appeals from the finding of the Secretary.

At the outset, the court notes that an onset date of January 4, 1982, seems somewhat arbitrary. The record clearly demonstrates the progressive nature of plaintiff's illnesses. Plaintiff's condition was obviously disabling sometime prior to the decision to amputate his leg.

██ On this appeal, the main issues before the court are the non-exertional limitations resulting from plaintiff's drinking and whether or not plaintiff was able to control his drinking. As has been stated in a supplemental brief from the government, the determination as to whether plaintiff retains the voluntary ability to control his drinking need only be made once it has been found that plaintiff is disabled under the Act and that discontinuance of drinking

would end the disability. *See Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982).

The evidence in the record as to plaintiff's limitations in 1979 is contradictory. Several reports from physicians indicate that plaintiff will be able to return to work *after* treatment (Tr., pp. 180–81, 186–87). Others say it is unknown when plaintiff will be able to return to work (Tr., pp. 175–78).

Treating physician Barry Gruber issued two reports and a residual functional capacities assessment in February of 1980. In a February 27, 1980, report, he found plaintiff "severely disabled." He found plaintiff unable to engage in sustained work and termed the outlook "dismal" (Tr., p. 208). In the same report, he noted that plaintiff was incapable of handling benefits on his own (Tr., p. 210). The physical capacities assessment prepared that same day, however, indicated that plaintiff could do sedentary work (Tr., p. 211). In view of that report, the Secretary's finding that plaintiff had the *physical* capacity for sedentary work is supported by substantial evidence.

However, the ALJ failed to account for the non-exertional limitations caused by plaintiff's drinking as shown by the record. During the second hearing, a vocational expert testified that if plaintiff retained the ability for sedentary work *and* had no other restrictions, he would be able to work (Tr., p. 264). However, the expert also stated that if plaintiff had a "chronic and acute" problem with alcohol, which caused forgetfulness and frequent absences, plaintiff could not work (Tr., pp. 262 and 263).

Plaintiff has been repeatedly diagnosed as a chronic alcoholic, and this was one of the diagnoses upon which his treating physician found him to be "severely disabled" (Tr., p. 208). The testimony of plaintiff's brother indicates that plaintiff was released from his last job due to his drinking and poor health. He testified that plaintiff has worked for 23 years despite a drinking problem, but that his drinking eventually caught up with him. Plaintiff was sent

home from work on several occasions because of his drinking. Finally, plaintiff's brother testified that plaintiff did not remember things when he was drinking (Tr., pp. 254–57).

Plaintiff's sister also testified. She said he had a "drinking problem" during the years in question. His drinking forced him to leave his mother's home and live, for a time, at a YMCA. His sister recalled that plaintiff would forget his doctor's appointments during this time (Tr., p. 257–61).

Plaintiff himself testified that he does not concentrate well. He appeared confused (Tr., pp. 74–76). Finally, a CAT scan of his brain revealed minimal cortical cerebral atrophy (Tr., p. 128). This was not mentioned by the ALJ.

In light of the vocational expert's opinion that plaintiff would be unable to perform substantial gainful activity if he suffered from alcohol-related, non-exertional restrictions, the testimony that he did have such restrictions and his physician's view that plaintiff was severely disabled, a finding of "not disabled" is not supported by substantial evidence.

Plaintiff's disability was clearly related to his alcohol consumption such that the cessation of his drinking probably would have ended the disability. The next step in the analysis is whether plaintiff retained the voluntary ability to stop drinking. Interestingly, even though the ALJ found plaintiff *not* disabled, he went on to find that plaintiff could control his drinking. The ALJ pointed to plaintiff's long history of work despite his alcoholism. However, plaintiff was forced to quit work in large part because of his drinking. The ALJ relied most heavily on the testimony of plaintiff's sister that plaintiff no longer drinks, and has not since his surgery. The ALJ believed that since plaintiff has now stopped drinking, he could have controlled his drinking in the two or three years before surgery (Tr., p. 231).

It is difficult to see the relevance of plaintiff's cessation of drinking in 1982 to his ability to control his drinking in 1979–81, a time when his drinking had intensified (Tr., p. 231). Plaintiff was essentially forced to stop drinking in 1982, since he spent several weeks in the hospital after the amputation of his leg and was restricted in his ability to move about. The fact that an alcoholic can *now* control his drinking does not mean he could control it in the past.

The Appeals Council supplemented the ALJ's opinion on this issue. In addition to the above, the Council noted that plaintiff had been advised on several occasions to stop drinking and to attend rehabilitative programs (Tr., p. 223). The ALJ made a similar observation, noting that plaintiff failed to heed the advice of his doctors to stop drinking and also to take his prescriptions (Tr., p. 231). The government only points to one place in the record where it is shown that plaintiff did not take his medication (Tr., p. 150). Plaintiff certainly did not stop drinking.

 However, once a person is found to have alcohol-related impairments which prevent him from engaging in substantial gainful activity, he cannot be denied benefits simply because he continues to drink. If he is unable to control his drinking, he is entitled to benefits. *Adams v. Weinberger*, 548 F.2d 239, 242–43 (8th Cir.1977).

The Council also noted that, on one occasion, plaintiff did attend some Alcohol Anonymous meetings, but stopped going. In early 1979, Dr. Skipper noted that plaintiff had attended a few sessions. However, unlike the case of the plaintiff in *Rutherford*, 685 F.2d at 62, these few meetings were not helpful. Plaintiff showed poor recognition of his drinking problem, fair motivation, and he did not improve (Tr., pp. 120 and 130). Plaintiff's failed attempt to stop drinking indicates that he has lost the voluntary ability to control his consumption. *See, generally, Johnson v. Harris*, 625 F.2d 311 (9th Cir. 1980).[1]

---

1. According to a recent article in the *New York* *Times* Sunday Magazine, new medical evidence

The reasons given by the Secretary for finding that plaintiff was able to control his drinking do not constitute substantial evidence in support of that finding.

The decision of the Secretary is reversed. The case is remanded for a calculation of benefits from February 1980, the time plaintiff's treating physician labeled him "severely disabled" and unable to handle benefits.

So ordered.

indicates that alcoholism is, in large part, biologically determined. The metabolism of alcoholics differs distinctly from the metabolism of non-alcoholics. This difference is believed to be due either to the effects of past heavy drinking or to genetic predisposition. This view has led some experts in the field to doubt the ability of an alcoholic to overcome his illness through will power and psychological counseling alone, since alcoholics are biologically addicted. "A New Attack on Alcoholism," *The New York Times Magazine,* October 20, 1985, p. 46.