724 F.Supp. 71 (1989)
James A. DeCAROLIS, Plaintiff,
v.
SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.
Civ. No. 88-182L.
United States District Court, W.D. New York.
February 15, 1989.
James A. DeCarolis, Rochester, N.Y., pro se.
Anne VanGraafeiland, Asst. U.S. Atty., Rochester, N.Y., for defendant.

DECISION AND ORDER
LARIMER, District Judge.
This is an action brought pursuant to the Social Security Act, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services ("Secretary") that denied plaintiff's application for disability insurance benefits and Supplemental Security Income Benefits. Plaintiff had a hearing before an Administrative Law Judge (ALJ) who denied plaintiff's application for benefits in a decision dated September 30, 1987. The ALJ found that plaintiff did not have an impairment or combination of impairments entitling him to benefits and that he had the capacity to perform his past relevant work. This decision *72 became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review.
On June 10, 1988, plaintiff, appearing pro se, filed a motion for summary judgment. On August 2, 1988, the Secretary cross-moved for judgment on the pleadings.

ADMINISTRATIVE RECORD
Plaintiff appeared without counsel at the hearing before the ALJ. He was the only witness and the hearing lasted about forty-five minutes. Plaintiff is a forty-four year old single male with a high school equivalency degree. He worked from 1970 to 1976 with the United States Postal Service and then from 1978 to 1984 with Eastman Kodak Company. In each case he was fired for absenteeism. He claims that he was unable to work because of an arthritic back condition and bronchitis, but he admitted that he had a serious drinking problem which contributed to the absenteeism. He admitted that he had been advised to attend an alcohol treatment program and, in fact, he received treatment for ninety days at an in-house facility. At the time of the hearing, he claimed that he only drank "occasionally, maybe twice a month." Although on those occasions, he would drink twelve beers at a time.
At one time he owned a home but apparently sold it and used the proceeds to stay in hotels and motels. Eventually his funds were depleted and he was forced to live on the streets and sleep in a car. At the time of the hearing, he was staying with the Volunteers of America.
At one time he claimed to have abstained from alcohol for about one year. He admits to smoking three packs of cigarettes a day which may aggravate his alleged bronchitis condition.
Plaintiff's medical history shows a clear and unmistakable pattern of serious alcohol abuse. On June 24, 1985, he was admitted to Rochester General Hospital suffering from alcoholic gastritis and a buttock wound. (170). The discharge summary notes that plaintiff was admitted "with a notable past medical history of ethanol abuse." Plaintiff was brought to the emergency room after being found on the floor of his apartment "surrounded by many empty alcohol bottles." (171). Over the course of his hospitalization, he was found to be "wildly confabulatory" which was secondary to his alcohol abuse. He remained in the hospital for approximately two months recovering from the alcoholism and the buttock wound.
A short time later, on September 3, 1985, he was again admitted to Rochester General Hospital. The principal diagnosis was alcohol abuse. (156). The admission note indicated that plaintiff was "well-known" at the hospital having recently been admitted for problems of alcohol abuse. (159). According to the admission note, plaintiff claims to drink one to two six-packs of beer per day. He was living out of his car unable to care for himself. (160). Although plaintiff had other problems, the "main reason for admission" was his alcohol abuse problem. The recommendation was that he be evaluated and placed in a alcohol rehabilitation program as soon as possible. (161-162).
Plaintiff underwent approximately two months of in-house treatment at the Alcoholism Treatment Facility, East Henrietta Road, Rochester, New York. He was admitted February 5, 1986 and discharged April 30, 1986. This discharge summary (197) noted that plaintiff had been drinking alcohol for twenty-five years. He had no previous in-patient treatment for alcoholism nor any exposure to AA. It noted that he had a history of being fired from jobs due to absences/tardiness which was "directly associated to his drinking." He was admitted to the facility with a diagnosis of "chronic alcoholism." In the Final Assessment Report it is noted that his progress was not very good and that he still "had a long way to go" in terms of developing self-esteem and engaging in social activities. His final diagnosis was again, chronic alcoholism and his prognosis for recovery was "poor." (198).
In a report dated September 17, 1986, Dr. John A. Foster at Rochester General Hospital submitted a report to the New York State Department of Social Services, Office *73 of Disability Determinations. He described plaintiff's admissions to Rochester General Hospital in June and September 1985. Dr. Foster stated that the "patient's alcoholism and memory problems would likely preclude his ability to function in any kind of job." (232). He also noted that the alcoholism is "partly a psychiatric problem." He also indicated that plaintiff had "cerebral deterioration which is likely of an organic nature." (235).
Plaintiff was also referred to Dr. Royle Miralles, a psychiatrist. Dr. Miralles noted that although the plaintiff claimed to have abused alcohol for only a short time during the course of the interview it became clear that he had "a long standing history of alcohol abuse." He started drinking at age 18 and often either quit working or was fired because of his drinking. (237).
Miralles described plaintiff has "a carelessly dressed man with disheveled hair who appeared poorly groomed and had a noticeable body odor." He noted that plaintiff had "poor insight" and tends to use denial and rationalizationespecially when it comes to dealing with alcohol problems. (239). His impression and diagnosis was "alcohol abuse continuous." (239). He noted that plaintiff is unmotivated to work. He recommended referral to an alcohol treatment program and a rehabilitation agency. (239).
Plaintiff's treating physician, Dr. Samuel Tuminelli, was contacted by the Secretary. According to his report (255), he had been treating plaintiff since 1984 for hypertension and severe chronic alcoholism. He noted that it was difficult to treat plaintiff because he did not appear for his periodic examinations to control hypertension. But, Dr. Tuminelli noted that "his alcoholism became his most disabling disease." (255).
Plaintiff was examined by several doctors for the Secretary. Dr. Linda Hawkins examined plaintiff in March 1987. She found no evidence of physical impairment but her primary diagnosis was alcohol abuse. (69, 71). In terms of mental residual functional capacity assessment, she noted that plaintiff was "markedly limited" in his ability to understand and remember detailed instructions and "markedly limited" in his ability to carry out detailed instructions and his ability to interact appropriately with the general public. He was moderately limited in his ability to maintain attention and concentration to perform activities with a regular schedule and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (72-73).
Concerning a review of any personality disorders under § 12.08, she noted the presence of pathological dependence, passivity or aggressivity. (81). Furthermore, in reporting on the severity of the mental impairment, she noted that plaintiff "often" experienced deficiencies of concentration. (83).

DISCUSSION
Under well recognized authority, this court must affirm the decision of the Secretary if there is substantial evidence supporting his determination. 42 U.S.C. § 405(g); Townley v. Heckler, 748 F.2d 109, 112 (2d Cir.1984); Parker v. Harris, 626 F.2d 225, 231 (2d Cir.1980).
The Secretary has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520, 416.920; Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982).
Steps one and two of the evaluation process are not in dispute here. The ALJ determined that the claimant met the disability insured status requirements and he conceded that plaintiff has not engaged in substantial gainful activity since June 1984.
Plaintiff claims that he is entitled to benefits because of physical impairments and because of chronic alcoholism. The ALJ determined that plaintiff's physical complaints are "unsubstantiated by the medical evidence." (13). The ALJ noted that although plaintiff had chronic alcoholism "with some hepatomegaly and some evidence of memory difficulties, and a history of hypertension and obstructive pulmonary disease" he does not have an impairment or combination of impairments listed in, or *74 medically equal to one listed in Appendix 1, Subpt. P, Regulation No. 4.
Although the ALJ was not specific in his decision, the relevant listing appears to be § 12.09 Substance Addiction Disorders at Part 404, Subpt. P, Appendix 1. The question before the ALJ should have been whether plaintiff's chronic alcoholism is of such a nature and had an effect on plaintiff that he was unable to engage in substantial gainful activity.
Because I believe that the ALJ improperly applied the legal standard concerning chronic alcoholism, I must reverse and remand this case for further proceedings.
First of all, I believe that plaintiff's physical complaints, considered separately, do not support a claim for payment of benefits. Virtually all of the medical evidence indicates that plaintiff's physical problems are minor or secondary to his major problem: chronic alcoholism. Therefore, there is substantial evidence to support the Secretary's decision that plaintiff does not suffer from any disabling physical impairment.
Plaintiff's alcohol abuse is another matter. Although in the recent past there may have been a reluctance to recognize chronic alcoholism as a disabling disease, that is not now, or should not be, the case. It is now well-recognized that chronic alcoholism uncontrolled addiction to alcohol is disabling if it impairs the claimant's ability to engage in substantial gainful activity. Cooper v. Bowen, 815 F.2d 557, 560 (9th Cir.1987); McShea v. Schweiker, 700 F.2d 117, 119 (3rd Cir.1983); Ferguson v. Schweiker, 641 F.2d 243 (5th Cir.1981).
Addiction to alcohol can be of such severity as to meet the Listings at 20 C.F.R., Part 404, Subpt. P, § 12.09, Substance Addiction Disorders. But, it has also been held that chronic alcoholism can be disabling if it, alone or in combination with other causes, prevents a person from engaging in substantial gainful employment. Wolf v. Secretary, 612 F.Supp. 289, 290 (W.D.N.Y. 1985).
To coin a phrase used by the Third Circuit, "[t]he medical records in this case reek of chronic and severe alcoholism." McShea, supra, 700 F.2d at 118. There is not one medical report in the file that does not indicate that plaintiff suffers from chronic alcoholism. The record is replete with serious episodes of intoxication, hospitalization, alcohol treatment, job loss, inability to care for himself, lack of motivation, denial, wasting of assets, and all the other classic symptoms of chronic alcoholism.
With such a clear diagnostic picture, the sole issue in this case was for the Secretary to determine whether plaintiff was addicted to alcohol during the relevant period and, if so, whether he can control his drinking. In other words, has the claimant lost the voluntary ability to control his drinking. If so, he is entitled to disability benefits. Cooper v. Bowen, supra, 815 F.2d at 560; Purter v. Heckler, 771 F.2d 682, 698 (3rd Cir.1985); Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982), cert. denied, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447; Simmons v. Secretary, 621 F.Supp. 1174, 1176 (W.D.N.Y.1985); Wolf v. Secretary, supra, 612 F.Supp. at 291-292.
The ALJ failed to directly address these matters. First of all, it is unclear from his decision whether the ALJ considered whether plaintiff met the Listings under § 12.09 concerning Substance Addiction Disorders. That section is not discussed in the ALJ's decision. The ALJ mentioned that plaintiff had a history of "chronic alcoholism" (11). He recounted in summary fashion plaintiff's several hospital visits and commitment to an alcohol treatment facility in 1986. The record here seems to be a classic case of chronic alcoholism. In fact, many of the facts set out in the cases cited in this decision reflect a remarkably similar pattern.
The ALJ failed to make specific findings as to whether plaintiff was suffering from chronic alcoholism, whether plaintiff had an ability to control his drinking and whether his alcoholism and his inability to control his drinking had a disabling affect on his ability to perform substantial gainful *75 employment. This was error. Cooper v. Bowen, supra, 815 F.2d at 560-561.
The Social Security Act is a remedial statute, "to be broadly construed and liberally applied." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.1983). There is an obligation on the ALJ to scrupulously and conscientiously probe into all the relevant facts especially when the claimant is not represented by counsel. Donato v. Secretary, 721 F.2d 414, 418-19 (2d Cir. 1983); 20 C.F.R. 404.944.
When there is evidence in the record of alcoholism, especially evidence as severe as existed in this case, the ALJ had an obligation to pursue the matter and develop a full and complete record on this issue. Cooper v. Bowen, supra, 815 F.2d at 560-561; McShea v. Schweiker, supra, 700 F.2d at 119.
The proper legal standard for determining disability because of chronic alcoholism was not used here. The ALJ noted that there was no indication that plaintiff suffered from any psychological or emotional impairment related to alcoholism "other than the inability or lack of desire to control his drinking ...". (11). But that is precisely the point when dealing with chronic alcoholism: The inability to control drinking. That inability to control drinking is a disabling disease if it prevents the claimant from engaging in substantial gainful employment.
The ALJ mentioned at least twice that plaintiff was "unmotivated", as if that fact undercut plaintiff's claim for benefits. The ALJ noted that Dr. Miralles, noted that plaintiff was "unmotivated" rather than "unable" to work (11) (emphasis in original). But this comment of Dr. Miralles is consistent with his diagnosis of "Alcohol Abuse Continuous". (239). He notes that plaintiff's documented alcohol abuse "appears to have resulted in a disruption in most areas of his life ...". (239). Miralles recommended that plaintiff be referred an alcohol treatment program and a rehabilitation agency. (239).
The ALJ also notes in his decision that plaintiff is "unmotivated towards sobriety" and that he shows "poor judgment in managing his consumption of alcohol." (12). Considering the record in this case, this is a classic example of understatement.
This case must be remanded to the Secretary to review plaintiff's claim under the proper legal standard. The Secretary must determine if plaintiff suffers from chronic alcoholism. In light of the unchallenged medical evidence here, it is hard to see how there could be any other finding. In light of the cases discussed above, the Secretary must determine if plaintiff has lost the voluntary ability to control his drinking. He must determine if this chronic alcoholism whether alone or in combination prevents him from engaging in substantial gainful employment.
From my review of the record, it does not appear that any of the medical experts who saw plaintiff or reviewed his records was ever asked to give an opinion concerning these matters. Absent some expert opinion on these questions, there is no substantial evidence to support the Secretary's decision that plaintiff's alcoholism is not disabling.
The court shares the concerns discussed in Cooper and McShea that payment of compensation benefits directly to a chronic alcoholic could exacerbate his problem. Based on the history presented in this record, it would not seem advisable to make direct payments to plaintiff if he continues to exhibit all of the classic signs of chronic alcoholism. As discussed in the Cooper and McShea cases, it appears that payments could be conditioned on receipt of alcohol treatment or that a representative payee be designated. Cooper v. Bowen, supra, 815 F.2d at 561; McShea v. Schweiker, supra, 700 F.2d at 119. Certainly in plaintiff's case, these options should be explored by the Secretary if benefits are awarded.

CONCLUSION
For the reasons stated above, plaintiff's motion for summary judgment is denied; defendant's motion for judgment on the pleadings is denied and the decision of the Secretary is reversed and the case is remanded *76 to the Secretary for further proceedings consistent with this decision.
IT IS SO ORDERED.