Robin SMITH, S.S. # 064–48–7602, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

Nos. CV–90–1044, CV–87–3320.

United States District Court, E.D. New York.

Oct. 21, 1991.

Cherie Howard, Bedford/Stuyvesant Community Legal Services Corp., Brooklyn, N.Y., for plaintiff.

Thomas A. Jones, Sp. Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

### MEMORANDUM AND ORDER

GLASSER, District Judge:

This is an action under 42 U.S.C. § 1383(c)(3) to review a final decision of the defendant Secretary of Health and Human Services (the "Secretary of HHS") in which the Secretary denied the application of plaintiff Robin Smith for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons stated below, the decision of the Secretary is reversed.

### FACTS

1. *Procedural Posture*

Ms. Smith first applied for SSI benefits on June 25, 1986 (Tr. 39–48); she claimed disability by reason of asthma, "nerves", and drug addiction. The denial of her application was affirmed by an Administrative Law Judge ("ALJ") after a hearing at which Ms. Smith appeared pro se. (Tr. 4–10). Review of the decision of the ALJ was denied by the Office of Hearings and Appeals of HHS. (Tr. 1A–2).

Ms. Smith then brought suit in the Eastern District of New York under docket number CV–87–3320. By order dated February 10, 1988, Judge Costantino remanded the case "so that a fuller examination may be made of plaintiff's ability to work with regard to her asthmatic condition." (Tr. 218). The Appeals Council of HHS vacated the decision of the ALJ and remanded the case to a second ALJ. (Tr. 174–176). Ms. Smith failed to appear at a new hearing held before the second ALJ; he subsequently concluded that she was not disabled and was not entitled to SSI benefits. (Tr. 151–159). The Appeals Council accepted the decision of the second ALJ. (Tr. 150). Ms. Smith thereupon filed the present suit under docket CV–90–1044; she is now represented by counsel.

2. *Evidence of Plaintiff's Disability*

Ms. Smith is a black female in her middle thirties. Her education extends only to the ninth grade, and she has not received a high-school equivalency certificate. She has worked only once in her life when she spent six months in 1982 assembling components for radio switches. (Tr. 84). There is evidence that she has been addicted to heroin since her early teens and that she engaged in prostitution from a very early age to support her drug habit. She dropped out of school at age 14 to give birth to her first child, and she has since then delivered four other children; she has also had two elective abortions. It appears that all of her children have been placed in the custody of her relatives. One examining neuropsychologist, Dr. Roman Pabis, remarked of her:

> She was physically and psychologically abused since her childhood. Physical suffering and beating received from her

pimps, johns, and drug dealers was for her an inevitable "normal" by product [sic]. She did not know a different life. She was exposed to the most ugly [sic] and morally depraved section of the life in the City of New York.

(Tr. 261).

As to her claims of disability, there is a disappointing absence of evidence from any treating physician in the administrative record. Indeed, even when her case was remanded by Judge Costantino, Ms. Smith failed to provide reports or affidavits from any treating physician. It is disturbing in this regard that the ALJ who conducted Ms. Smith's first hearing in 1987—a hearing at which she appeared pro se—appears to have told her that a report from a physician who may have been treating her for asthma was not necessary. (Tr. 37–38). He asserted this on the basis of her representation that the report simply listed the medicines that had been prescribed for her; however, whether or not this physician's report may have provided additional relevant evidence is impossible to discern from the transcript. Thus, only the reports of examining and consulting physicians are available for consideration.

A. Evidence Regarding Physical Impairment

Ms. Smith was an outpatient at Brookdale Hospital Medical Center on March 29, 1985 for matters concerning a pregnancy test. (Tr. 99–116). At that time, an examination revealed that her lungs were clear. (Tr. 114). A chest x-ray conducted at the hospital on April 14, 1985 confirmed that her lungs were not significantly abnormal. (Tr. 102). After two visits to St. Mary's Hospital in March of 1986 for gynecological problems, she was diagnosed by the hospital as having bronchial asthma, and she was instructed to continue taking Tedral.[1]

Ms. Smith was examined by Dr. Howard Finger on September 11, 1986 with respect to her complaints about bronchial asthma. (Tr. 133–137). She recounted a history of asthma since childhood and reported that her asthma is exacerbated by physical exertion, damp weather, and upper respiratory tract infections. She reported that she has severe asthma attacks approximately once a month, and that, at best, she can walk only a few blocks before experiencing shortness of breath. She also told Dr. Finger that she has a "nervous condition" and reported heaviness in her legs because of varicose veins. She denied any current cocaine and alcohol abuse, but she acknowledged a past history of intravenous heroin and cocaine use. Ms. Smith told Dr. Finger that she was in a methadone program at the time of the examination and that she received 30 milligrams of methadone each day.

Dr. Finger's examination of Ms. Smith revealed needle track marks on her upper extremities. He also noted expiratory wheezing and remarked that expiration was moderately prolonged. (Tr. 134). He diagnosed clinically apparent bronchial asthma, a history of intravenous heroin and cocaine use, and atypical chest pain. (Tr. 135–136).

B. Evidence Regarding Mental Impairment

Ms. Smith was also examined by Dr. Jorge Oldan, a psychiatrist, on the same day that she saw Dr. Finger.[2] (Tr. 123–125). She told Dr. Oldan that she was at the time participating in a methadone program, but that she had used heroin and cocaine during the past year. He determined that she exhibited no thought disorder, delusions, hallucinations, phobias, suicidal ideation, or obsessive ideas. He thought her affect appropriate, her memory intact, and her concentration normal. He determined that she exhibited good judgment for social situations and that she was able to care for herself as well as to interact with others.

---

1. The medical records from these two hospitals were not included in the administrative record until they were obtained by subpoena after Judge Costantino ordered a remand of the case.

2. It appears that the examinations of Drs. Finger and Oldan were both conducted to assist in the processing of Ms. Smith's application for SSI benefits.

Ms. Smith was also examined by Roman Pabis, Ph.D., a neuropsychologist, on March 14, 1988.[3] (Tr. 261–263). Among other matters, Dr. Pabis reported that, at the time of his examination, Ms. Smith was "drug-free." However, he offered no evidence of this conclusion, and it thus appears to be predicated entirely on Ms. Smith's own reports to him.

Dr. Pabis also noted that Ms. Smith's affect was "restricted". He reported that she "was not able to respond to people with the normal range of emotions." He noted anxiety, depression, and occasional suicidal ideation. He found that she had experienced at times "auditory hallucinations" and delusions "about people who could control her from a distance."

He found her intelligence to be in the low average range. He determined that her personality functioning was deficient and had never advanced beyond adolescence. He noted "antisocial trends" that "result in disturbing her ability to function in the society as a productive and self supporting [sic] member." Dr. Pabis found, as associated features of this disorder: anxiety, tension, depression, inability to tolerate boredom, and "the conviction that other people are hostile toward her." He noted, however, that "[h]er interpersonal difficulties and dysphoria persisted into adulthood although now her flagrent [sic] antisocial behaviors have diminished."

Dr. Pabis further diagnosed Ms. Smith as having "several features characteristic of Borderline Personality disorder." He noted that:

> Those features include a pattern of unstable interpersonal relationships, impulsiveness in substance abuse, sexual promescuity [sic], marked shifts from baseline mood to depression, anxiety and marked and persistent identity disturbances manifested by uncertainty about her self-image, long-term goals, type of friends, and recurrent suicidal ideations and attempts. In addition, she has little initiative, is dependent, and self-defeating. She also allowed herself to be abused in amasochistic [sic] manner.

(Tr. 262–263). Finally, he observed that she "might be ready to start the rehabilitation process [although it] will be long and slow." (Tr. 263). Again, the entirety of Dr. Pabis' diagnosis was drawn from one examination of Ms. Smith.

### 3. The Administrative Determinations

Finally, several matters from the administrative proceedings are noteworthy. First, Ms. Smith appeared pro se at her initial hearing with the ALJ on April 24, 1987. The transcript from that hearing clearly raises a reasonable question as to whether Ms. Smith was using heroin or cocaine at the time. At first, she indicated that she had not used drugs for three months prior to the hearing (Tr. 28); then, she indicated that she may have used them the evening before the hearing (Tr. 29–30). Ms. Smith told the ALJ that she could not remember the last time she had been "drug-free" (Tr. 33) and that she was not at that time enrolled in a drug-treatment program. (Tr. 30). Nonetheless, the ALJ remarkably concluded in his decision that "her drug problem is responding to the program she is attending" (Tr. 7) and that "she has been on the program for the past 3 or 4 years." (Tr. 8).

As to her asthma, the ALJ determined that it was "not manifested by the pulmonary function findings that would meet listings level severity." (Tr. 7). To this end, the ALJ indicated that he found the report of Dr. Finger, an examining physician, to be the "report that is most illumative [sic] of the claimant's condition...." (Tr. 8). His decision concluded:

> The Administrative Law Judge has considered all the medical evidence in the record, whether or not specifically referrred [sic] to in this decision. Great weight is given to the report from the consultative examiners.... These reports show that the claimant has asthma that is exacerbated by heavy physical exertion. There is nothing in the record to indicate that the claimant would be precluded from standing and walking for short periods of time. The claimant

---

3. This examination occurred between the first and the second administrative hearings.

would be unlimited in her ability to sit. In addition she should be able to lift and carry light amounts of weight. In addition claimant has a history of substance abuse. She is in a Methadone maintainance [sic] program at the present time and according to the consultative psychiatrist she is making good response to this program. There is no indication of any mental pathology contained in the record. Thus, the claimant's substance abuse would not further diminish her occupational base.

(Tr. 9).

In the decision of the second ALJ—after remand of the case from Judge Costantino and after a second hearing—Ms. Smith was again determined not to be disabled. The decision cited the reports from Brookdale and from St. Mary's hospitals to the effect that Ms. Smith's asthma was not so severe as to rise to the level of disability. (Tr. 155). Further, the second ALJ noted the report of Dr. Pabis, but he concluded that Dr. Pabis had not documented any disabilities. In fact, the second ALJ remarked, apparently on the basis of Dr. Pabis' own statement in his examination record: "Although claimant had a history of drug abuse, claimant was maintained on the methadone regimen and at the time of the evaluation, to wit, March 1988, claimant was drug free." (Tr. 156). He concluded that neither her asthma nor her drug abuse—nor both together—prevented her from engaging in "sedentary work activity." (Tr. 157–158).

## DISCUSSION

An individual is eligible for SSI benefits if he demonstrates, inter alia, that:

[H]e is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

42 U.S.C. § 1382c(a)(3)(A). Further, he must have a "physical or mental impairment ... of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

A federal district court has jurisdiction to review decisions as to SSI benefits under 42 U.S.C. § 405(g) (which is made applicable through 42 U.S.C. § 1383(c)(3)). The court may review the decision of the Secretary only to determine whether there is "substantial evidence" in the administrative record to support the determination of the Secretary. 42 U.S.C. § 405(g). *See Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984) ("[A]bsent legal error by the Secretary, her decision cannot be set aside if it is supported by substantial evidence."). "Substantial evidence" is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Hence, the task before the court on this motion is to determine whether the administrative record contains evidence that "a reasonable mind might accept as adequate to support [the] conclusion" that Ms. Smith is not disabled.

■ However, that standard is not satisfied in this case: There is no substantial evidence that Ms. Smith is not disabled. As a threshold matter, the opinion of a treating physician is entitled to careful consideration. *Bluvband*, 730 F.2d at 893–94; *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978) ("The expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary.") As a necessary corollary, the opinions of "examining physicians" are entitled to very little weight. *Bluvband*, 730 F.2d at 893–94. Thus: "[T]he report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole...." *Hancock v. Secretary of Health, Education, and Welfare*, 603 F.2d 739, 740 (8th Cir.1979). *See also Selig v.*

*Richardson,* 379 F.Supp. 594, 601 (E.D.N.Y.1974). Here, however, there is not a single report from a treating physician. Rather, all the physicians who submitted evidence in this case saw Ms. Smith only once; yet, the Secretary determined that these reports should be given "great weight". (Tr. 9). The conclusory reports of Drs. Finger, Oldan, and Pabis—predicated as they are on single encounters with Ms. Smith—hardly constitute "substantial evidence".

■ Further, when Ms. Smith *did* mention the existence of a report by the physician who was treating her for asthma, the ALJ told her it was not necessary that she submit a copy of it. (Tr. 37–38). This failure by the ALJ to secure the report of the sole treating physician about whom anything at all was known demonstrates a remarkable disregard for the "treating physician" rule; moreover, it is a sufficient basis for remand. *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980) (failure of ALJ to advise a pro se plaintiff that he "should obtain a more detailed statement from his treating physician" requires remand).

■ Also, the ALJ was under a duty to ensure that Ms. Smith "had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purpose of the Act.'" *Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751, 755 (2d Cir.1982) (quoting *Gold v. Secretary of Health, Education, and Welfare,* 463 F.2d 38, 43 (2d Cir.1972)). Because she appeared pro se, the ALJ had a heightened duty " 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts....'" *Hankerson,* 636 F.2d at 895 (quoting *Gold,* 463 F.2d at 43). In these duties, the ALJ failed entirely: Despite contradictory statements by Ms. Smith both to the examining physicians and to the ALJ himself, he did not "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" as to whether or not she was enrolled in a drug treatment program, whether or not she was taking methadone,

whether or not she had used heroin and cocaine in the recent past, and whether or not she was under the influence of drugs at the time of the hearing. Indeed, despite her statements that indicated that she was *not* involved in a drug treatment program and that she was in fact taking drugs at the time of the hearing, both ALJs concluded that she was proceeding satisfactorily in a treatment program and that, accordingly, her addiction did not constitute a disability. But the transcript of the hearing before the first ALJ clearly reveals that there is *not* substantial evidence to support this conclusion; he himself exhibited suspicion that she was under the influence of drugs at the hearing. (Tr. 29) That transcript likewise demonstrates that the ALJ neglected his duty to develop and consider "all the relevant facts" concerning Ms. Smith's drug abuse.

Furthermore, the ALJs failed to apply the proper standards in determining whether or not Ms. Smith's substance abuse constituted a disability. As an initial matter, it is not in dispute that substance abuse can constitute a disability. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.09. Also, because the regulations consider both alcoholism and drug abuse to be "substance addiction disorders," it is fair to borrow from the case law regarding alcoholism in order to consider the standards for drug abuse as a disability.

The rule in the Second Circuit as to disability by reason of substance abuse was set forth in *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). The court there stated:

[C]hronic alcoholism can be disabling if it results in serious personality disorders ... or in a substantial physical impairment. However, if there is a continuing interrelationship between the excess consumption of alcohol and the disability, such that termination of the former will end the latter, the issue for the Secretary is whether the claimant has lost the voluntary ability to control his drinking. *Adams v. Weinberger,* 548 F.2d 239, 244 (8th Cir.1977).

Here, there is no contention that Ms. Smith has a "serious personality disorder" or a "substantial physical impairment" by reason of her drug addiction. Rather, the relevant inquiry is that of the second half of the *Rutherford* test. Hence, the question for the Secretary in her case is "whether [Ms. Smith] has lost the voluntary ability to control [her drug use]." Indeed, because the issue here is whether Ms. Smith's drug abuse constitutes a disability in itself, the rule of *Rutherford* imposes a *duty* on the ALJ "to determine whether plaintiff could control" her abuse of heroin and cocaine. *Wolf v. Secretary of Health and Human Services*, 612 F.Supp. 289, 291 (W.D.N.Y.1985). What the court remarked of alcoholism in *DeCarolis v. Secretary of Health and Human Services*, 724 F.Supp. 71, 75 (W.D.N.Y.1989) is equally true of other substance abuse: "[I]nability to control drinking *is* a disabling disease if it prevents the claimant from engaging in substantial gainful employment" (emphasis added). *See also Cooper v. Bowen*, 815 F.2d 557, 560 (9th Cir.1987) ("[T]he uncontrollable addiction to alcohol—so uncontrollable as to impair the alcoholic's gainful activity—has been held to be disabling, even with no evidence of physiological damage.").

■ These cases state clearly for the Secretary precisely what inquiry is to be engaged when Ms. Smith claims that her drug addiction constitutes a disability: The question is whether or not she has so lost control of her drug use that she cannot engage in substantial gainful employment. However, the administrative record is devoid of any attempt by the ALJs to satisfy this inquiry; they did not pursue Ms. Smith's oral reports that she was no longer in a drug-treatment program and that she may have taken drugs the evening before the first hearing. Rather, they dismissed her credibility and relied on the reports of examining physicians to the effect that she was "drug-free".[4] Thus, the ALJs plainly

ignored the Second Circuit mandate of *Rutherford* and its progeny, and they did not make the requisite inquiry concerning Ms. Smith's claim of disability.

Furthermore, the ALJs did not engage the inquiry set forth in the relevant administrative regulations. Under 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.09, the severity of a disability claimed because of "the regular use of substances that affect the central nervous system" must be evaluated in terms of several listed disorders. Those disorders in turn must be evaluated in accord with more detailed regulations. However, the ALJs attempted none of these evaluations: Thus, they ignored not only the dictates of the federal judiciary; they also ignored the directives of the Department of Health and Human Services.

■ The decision of the Secretary must be supported by substantial evidence on "the record as a whole." *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983). In this case, the record as a whole does not provide "substantial evidence" that Ms. Smith is not disabled because of her drug addiction: Although bare conclusory statements of examining physicians state that Ms. Smith was "drug-free" and involved in a drug treatment program, the transcript of the first hearing demonstrates that Ms. Smith may well have been under the influence of drugs even at the hearing itself. The first ALJ suspected as much. (Tr. 29). Thus, the determinations by both ALJs that Ms. Smith was undergoing successful treatment for her drug problem and that she was, accordingly, not under a disability, cannot be said to be supported by "substantial evidence". The evidence is not such that "a reasonable mind might accept as adequate." Indeed, the ALJs had a duty to develop more fully the evidence on this matter, but they ignored their obligation and simply seized upon the vacuous reports of two physicians who examined

---

4. The absurdity of this conclusion by the ALJs is, of course, that the only possible source for the observations of the examining physicians that Ms. Smith was "drug-free" was Ms. Smith herself. But a statement of Ms. Smith that she is not using drugs is not more credible than a statement of hers to the contrary simply because the former is repeated in the report of an examining physician.

Ms. Smith only once. Further, the ALJs ignored the relevant legal standards to assess Ms. Smith's claimed disability: They disregarded the inquiry set forth by the Second Circuit in *Rutherford,* and they disregarded the inquiry set forth by the Secretary in 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.09.

In view of the numerous errors, both substantive and procedural, made in the administrative proceedings, the only appropriate relief is reversal of the decision of the Secretary and institution of SSI benefits for Ms. Smith. Indeed, when pressed at oral argument on this motion, the Secretary conceded as much: He agreed with the court both that Ms. Smith is unable to perform "any ... kind of substantial gainful work which exists in the national economy" and that no purpose would be served by remand of this case; he also agreed with the court that reversal is appropriate.

### CONCLUSION

For the foregoing reasons, the decision of the defendant Secretary is reversed and benefits are to be awarded to the plaintiff.

SO ORDERED.