**Harkless PEED, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. CV–89–3384.**

United States District Court, E.D. New York.

Nov. 22, 1991.

Herbert Feinsod, Brooklyn, N.Y., for plaintiff.

Michelle J. Ritholz, Sp. Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is an action under 42 U.S.C. § 1383(c)(3) for review of a final decision by the defendant Secretary of Health and Human Services (the "Secretary") which denied the application of Harkless Peed for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth below, this case is remanded for a new administrative hearing.

## FACTS

Mr. Peed first applied for SSI benefits in 1988; he claimed disability by reason of high blood pressure, diabetes, and arthritis. His application was denied, and this denial was affirmed by an administrative law judge ("ALJ") after a hearing on March 13, 1989 at which Mr. Peed appeared pro se. After the Office of Hearings and Appeals of the Department of Health and Human Services denied his request for review, the decision of the Secretary became final; Mr. Peed then filed this action in October of 1989. He is now represented by counsel.

### 1. *Evidence of Plaintiff's Disability*

The plaintiff, Harkless Peed, is a 64-year-old black male who claims to have been disabled since 1986 by reason of diabetes, hypertension, arthritis, and poor vision. Mr. Peed is a high school graduate, and he worked as a truck driver until he was laid off in April of 1986. That job required Mr. Peed to deliver oil burners and heating supplies that weighed over 100 pounds; he contends that his arthritis eventually prevented him from satisfactory performance of these duties. He has sought employment as a chauffeur since 1986, but he did not have the necessary qualifications.

Mr. Peed complains of arthritis in his back, in his shoulder, and in his hips. He states that, on the advice of his physician, he tries to walk two miles each day, but that shortness of breath and weakness of legs often prevent him from completing the entire distance. He says that he experiences pain in the morning, in the evening, and when the weather is bad. He visits a Veterans Administration clinic every two months for treatment of his several maladies.

In the initial disability report which Mr. Peed completed on February 8, 1988, he

indicated that he suffered from "a heart condition that causes ... pain and discomfort." (Tr. 77). He further indicated that he could not "lift or carry objects" and that he has "shortness of breath." *Id.* He stated that he also has dizziness and that he takes insulin for his diabetes. *Id.* Elsewhere in the report, he indicated that he has high blood pressure, heart disease, and diabetes. (Tr. 79). He stated plainly that he had been advised by his treating source as to his disability status: "The doctor at the VA indicated I am unable to work due to my illness." (Tr. 80). In other forms filed with the Secretary, Mr. Peed indicated that he was under the care of Dr. Irving S. Behr and Dr. L.P. Advani of the Veterans Administration clinic. (Tr. 151, 153).

Three physicians examined Mr. Peed in conjunction with the processing of his application for SSI benefits. The first, Dr. Kohn of the Brooklyn Hospital, examined Mr. Peed on March 28, 1988. He diagnosed Mr. Peed as having insulin-dependent diabetes "under unknown control," hypertension "presently poorly controlled," "[h]eart problems ... of unclear nature," "[v]ision problems by history with evidence of a cataract in the left eye ...," "[a]rthritis of the left shoulder on examination ...," and "[p]ossible history of alcoholism...." (Tr. 131). The second physician, Dr. Ahrens Palumbo, examined Mr. Peed on April 6, 1988, and he diagnosed "[m]yopia, slight background diabetic retinopathy." (Tr. 142). The final examining physician, Dr. Peter Graham, saw Mr. Peed on August 30, 1988. He diagnosed: "Chest pains.... EKG does not indicate the presence of previous myocardial infarction.... Diabetes mellitus.... Hypertension, poorly controlled with present regimen.... Arthritis by history. No functional deficit.... Back pains by history.... No functional deficit noted." (Tr. 147).

The administrative record also contains approximately two hundred pages of Mr. Peed's medical records obtained by subpoena from the Veterans Administration. These records contain charts, test results, diagnoses, and prognoses of several physicians at the Veterans Administration—including the physicians whom Mr. Peed himself referred to as his primary treating physicians. These entries tend to confirm the existence of the illnesses claimed by Mr. Peed. For example, two entries by Dr. Behr (dated January 23, 1988 and October 24, 1988) refer to Mr. Peed's complaints of pain in his left shoulder. In both entries, Dr. Behr diagnoses "osteoarthritis" and prescribes 400 mg of Motrin (with advice to Mr. Peed to return for another visit in three months). (Tr. 164, 165). Mr. Peed's second treating physician at the Veterans Administration, Dr. Advani, also recorded entries that tend to support Mr. Peed's claims. For example, on August 4, 1988, Dr. Advani noted "HPN & DM"; these abbreviations no doubt refer to hypertension and diabetes mellitus. (Tr. 167). Similar entries by Dr. Advani are found for earlier dates. (Tr. 175).

Despite the volume of medical records from the Veterans Administration, however, most entries are in the form of "raw data"—laboratory reports, test results, and brief notations by various physicians. One of the few entries that presents a comprehensive report of Mr. Peed's status is a "case summary" handwritten by Dr. Robert J. Moran and dated November 14, 1986:

> Harkless Peed is a 60 y/o man treated regularly at the VA out-pt clinic Ryerson Street. He has insulin-dependent diabetes mellitus for which he takes NPH insulin: 35 units a.m. and 7 units p.m. He has hypertension requiring treatment with Minipress 2 mg.... He also has osteoarthritis for which he takes Motrin 400 mg.... The patient complains of weakness of both upper extremities. His range of motion at shoulder joints seems somewhat limited by pain, especially on the left and he has difficulty fully raising his arm over his head. I am referring the patient to neurology for further evaluation of this problem.

(Tr. 295). The records from the Veterans' Administration do not, however, appear to contain any ultimate diagnosis by any of Mr. Peed's treating physicians as to Mr. Peed's disability status.

## 2. *The Administrative Proceedings*

Mr. Peed appeared for an administrative hearing on March 13, 1989 before an ALJ. The ALJ advised Mr. Peed, who appeared pro se, that he had a right to representation by counsel, but Mr. Peed agreed to proceed without an attorney. (Tr. 17—18). The ALJ inquired extensively about Mr. Peed's age (Tr. 19), education (Tr. 19—20), present living arrangements (Tr. 20—22), previous employment (Tr. 23—25), and his attempt to obtain a job as a chauffeur (Tr. 26—27). However, the ALJ asked Mr. Peed very little about his disabilities other than to confirm that Mr. Peed did in fact claim to have specific maladies. For example:

Q You have high blood pressure.

A I have high blood pressure, sugar diabetes and everything.

Q Well, what else have you got besides diabetes and high blood pressure?

A Arthritis.

Q Where?

A In the back and shoulder. In the hips.

Q Uh-huh.

 . . . . .

Q Well, you're in very good shape. You've [sic] very well built. Do you exercise?

A The doctor asked me to walk approximately two miles a day if I can.

Q Uh-huh.

A But, you know, like when I start walking, if I get tired I have to sit to regain my—the leg gives out on me. That's the problem. I don't know what that is. They asked me to walk two miles a day if—

Q Where was that? The VA doctor.

A Yes, sir.

(Tr. 28—29). Indeed, the ALJ appears to have been more interested in how much Mr. Peed had been receiving in disability from the Veterans Administration and how much Mr. Peed's female companion was earning than he was in the severity of Mr. Peed's physical problems. (Tr. 30—31). After a brief inquiry into the medications taken by Mr. Peed (Tr. 32) and into Mr. Peed's daily activities (Tr. 33), the ALJ concluded the hearing without further investigation into Mr. Peed's complaints.

In his decision, the ALJ concluded that Mr. Peed does in fact suffer from high blood pressure, diabetes, and arthritis (Tr. 9—10). However, he also concluded that Mr. Peed's maladies were not so serious as to render him disabled (Tr. 10—11). The ALJ recognized that Mr. Peed's "sole treating source is the Veterans Administration outpatient clinic" (Tr. 9). However, the ALJ appears to have reviewed the records from the Veterans Administration in search of information as to which they are silent:

> The record reveals that the claimant suffers from insulin dependent diabetes.... A review of the Veterans Administration records reveals that the claimant has manifested no evidence of acidosis, neuropathy, or peripheral vascular involvement secondary to diabetes.... Although the claimant has complained of arthritis, numerous physical examinations at the Veterans Administration Hospital have not revealed any significantly limited motion, swelling, redness, or deformity of any joints....

(Tr. 9).

The ALJ concluded that Mr. Peed suffers from the illnesses he claims. However, in evaluating the severity of those illnesses to determine whether or not they are cognizable as disabilities under the regulations, the ALJ considered dispositive both the affirmative findings of the examining physicians and the negative inferences he drew from the Veterans Administration records. As to the examining physicians:

> At a consultative examination in March 1988 ... [t]he consultant concluded that the claimant's diabetes was under control, and that he had atypical chest pain, his hypertension was then poorly controlled, and that he had arthritis of the left shoulder manifested by limited range of motion on physical examination.... Similar findings were noted at a second consultative examination in August 1988.

(Tr. 10). The ALJ then noted the absence in the Veterans Administration records of any finding "of any impairment or combi-

nation of impairments which would either meet or equal the requirements of any Listing [under the regulations]." *Id.*

Finally, the ALJ evaluated the testimony of Mr. Peed himself:

> The claimant's allegations of debilitating pain and limited function are unsupported by the totality of the evidence, are inconsistent with the minimal treatment he receives and the extent of his daily activities, and are not credible. There is no evidence of pain of such intensity and duration as to preclude the performance of all work related functions. The claimant testified that he walks 2 miles a day and has sought work as a chauffeur, which is patently inconsistent with the existence of disabling pain or significantly limited functioning.

*Id.* Although the ALJ determined that Mr. Peed was unable to return to his previous job, he also found that Mr. Peed "has the physical capacity to sit for 8 hours out of an 8 hour work day, stand and walk for at least 6 hours out of an 8 hour work day, and lift and carry 50 pounds occasionally and 25 pounds frequently." (Tr. 10—11). That is, the ALJ found that Mr. Peed "retains the ability to perform a full range of medium work...." (Tr. 11).

## DISCUSSION

An individual is eligible for SSI benefits if he demonstrates that:

> [H]e is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

42 U.S.C. § 1382c(a)(3)(A). Further, the claimant must have a "physical or mental impairment ... of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

A federal district court has jurisdiction to review decisions as to SSI benefits under 42 U.S.C. § 405(g) (made applicable through 42 U.S.C. § 1383(c)(3)). The court may review the decision of the Secretary only to determine whether there is "substantial evidence" in the administrative record to support the determination of the Secretary. 42 U.S.C. § 405(g). *See Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984) ("[A]bsent legal error by the Secretary, her decision cannot be set aside if it is supported by substantial evidence."). "Substantial evidence" is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Hence, the task before this court on this motion is to determine whether, absent legal error by the Secretary, the administrative record contains evidence that "a reasonable mind might accept as adequate to support [the] conclusion" that Mr. Peed is not disabled.

 In this case, however, the administrative record reveals not that Mr. Peed is not disabled but that the Secretary committed substantial legal errors. As a threshold matter, an ALJ does not face a claimant such as Mr. Peed in an adversarial posture. Rather, the ALJ has a duty to ensure that the claimant receives "a full hearing under the Secretary's regulations and in accordance with the beneficent purpose of the [Social Security] Act." *Gold v. Secretary of Health, Education, and Welfare*, 463 F.2d 38, 43 (2d Cir.1972); *see also Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 755 (2d Cir.1982). Indeed, to confront a claimant without impartiality and without objectivity is to belie the quasi-judicial character of the duties of the ALJ. Thus, when, as here, the claimant appears pro se, the ALJ has a heightened duty " 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts....' " *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (quoting *Gold*, 463 F.2d at 43). The objective of the ALJ should be the develop-

ment of a complete record. *Echevarria,* 685 F.2d at 755.

■ Second, it is a mainstay of the law concerning SSI benefits that the opinion of a treating physician is entitled to substantial—if not controlling—weight. *Bluvband,* 730 F.2d at 893–4. The rule in the Second Circuit on this point—reiterated just days ago—could not be clearer:

> The treating physician rule states that the treating physician's opinion on the subject of medical disability is "(1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence." *Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988).

*Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991). *See also Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978) ("The expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary."). As a necessary corollary, the opinions of "examining physicians" are entitled to very little weight. *Bluvband,* 730 F.2d at 893–4. Thus: "[T]he report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole...." *Hancock v. Secretary of Health, Education, and Welfare,* 603 F.2d 739, 740 (8th Cir.1979). *See also Smith v. Sullivan,* 776 F.Supp. 107 (E.D.N.Y.1991). Disregard of this "treating physician" rule is itself a sufficient basis for remand. *Hankerson,* 636 F.2d at 896 (failure of ALJ to advise pro se plaintiff that he "should obtain a more detailed statement from his treating physician" merits remand).

■ However, these two principles—the duty to develop a full record and the treating physician rule—do not operate independently of each other, and an ALJ does not satisfy the former duty merely by issuance of a subpoena for all the medical records of a treating physician. Rather, the duty to develop a full record and to assist a pro se plaintiff compels the ALJ to move beyond pro forma compliance with the treating physician rule and to obtain from the treating source expert opinions as to the nature and severity of the claimed disability.

Because "[t]he expert opinions of a treating physician as to the existence of a disability are binding on the factfinder," it is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician. It is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and severity of a disability that is to be given deference. Thus, when the claimant appears pro se, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability. *See, e.g., Jones, supra,* 949 F.2d at 60 (request by ALJ to pro se claimant's treating physician for letter setting out opinion as to claimant's alleged disability determined to be adequate under treating physician rule). Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties to the pro se claimant under the treating physician rule.

■ A review of the administrative proceedings in this case demonstrates that the ALJ failed in his duties to Mr. Peed. Not only does the transcript of the hearing reveal a distressing lack of interest by the ALJ in the parameters of Mr. Peed's ailments and not only does the ALJ fail to make clear in his decision the relative weight he attributes to the reports of the

consulting physicians and to the records from the treating physicians, but the ALJ also did not endeavor to obtain the opinions of Mr. Peed's treating physicians about his claimed disabilities. The ALJ knew that Mr. Peed considered Drs. Behr and Advani of the Veterans Administration to be his treating physicians, and the ALJ obtained voluminous records from these doctors. Without the benefit of their opinions, however—opinions that are all but controlling in an SSI application—the ALJ read these records as much for what they did not, as for what they did in fact, state about Mr. Peed. But the ALJ cannot substitute his opinion for that of the treating physician; he cannot—as did the ALJ here—replace the diagnosis of the doctor who knows the patient best with his own reading of the claimant's history. To have failed to secure those opinions, then, was error.

For these reasons, this case is hereby remanded so that the Secretary may obtain the opinions of Mr. Peed's treating physicians as to his disability status.

SO ORDERED.