Maria SARAGO, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 94–CV–337H.

United States District Court,
W.D. New York.

April 26, 1995.

Alan B. Block, Neighborhood Legal Services, Inc., Buffalo, NY, for plaintiff.

Patrick H. Nemoyer, U.S. Atty. (Mary Roach, Asst. U.S. Atty., of counsel), Buffalo, NY, for Government.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented, pursuant to 28 U.S.C. § 636(c), to have the undersigned conduct all further proceedings in this case, including entry of judgment. Plaintiff initiated this action to seek review of the final decision of the Secretary of Health and Human Services (the "Secretary") denying her application for disability insurance benefits, and the Secretary has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Item 8).

For the following reasons, the Secretary's motion is denied.

## BACKGROUND

Plaintiff, Maria Sarago, was born on September 1, 1969, and was twenty-four years old at the time of the hearing (T. 40).[1] She received a high school general equivalency diploma in 1988, and has one year of college education (T. 201). Plaintiff has no prior relevant work experience although in high school she worked as a swimming and recreational instructor, and as a park assistant for the Cheektowaga Summer Youth Program (T. 202–3). She also worked as a sales assistant in a clothing store for four months in 1987 (T. 203–5).

On February 20, 1992, plaintiff was struck by a motor vehicle traveling at a high rate of speed while she was walking across a street. She was admitted through the emergency room to the Erie County Medical Center ("ECMC") (T. 100). X-rays showed multiple fractures of plaintiff's lower legs, which had to be repaired surgically (T. 100, 122–25). Plaintiff also suffered several internal injuries, including a fracture to the right hilum of the left kidney and a laceration to her spleen. Plaintiff underwent abdominal surgery to repair these organs (T. 132–34).

On February 28, 1992, a psychiatric consultation was conducted to assess plaintiff's symptoms of depression (T. 117). The doctor noted that television images of cars caused plaintiff to re-experience the accident with resulting nervousness, variable sleep, helplessness, and feelings of worthlessness. According to the doctor, plaintiff was reacting to the accident with "anger, frustration, and self-pity." During the session plaintiff denied alcohol abuse but admitted to occasional marijuana use. Plaintiff was diagnosed with Adjustment Disorder with Mixed Emotions

---

1. References preceded by "T" are to page numbers of the transcript of the administrative record, filed by the Secretary as part of her answer to the complaint.

and Post–Traumatic Stress Disorder. Imipramine was prescribed. *Id.*

On March 12, 1992, plaintiff was released from the hospital. Both of her legs were in casts but she was able to ambulate with a walker. Plaintiff was given specific instructions to report to the emergency room if any problems developed with her legs or with urination (T. 101).

In May 13, 1992, plaintiff apparently attempted to commit suicide by overdosing on cocaine. She was treated at Columbus Hospital (T. 185).[2] That same month plaintiff enrolled herself in an outpatient program for drug addiction at Lake Shore Community Mental Health Center ("LSCMHC") (T. 173–85). Dr. Jeffrey Kashin, a psychiatrist, supervises this program but plaintiff deals mainly with two counselors (T. 213).

The Physical Status Profile compiled by LSCMHC in May of 1992 reveals that at the time plaintiff started treatment she was ambulatory via wheelchair and occasionally walked with the assistance of a walker (T. 173–77). The record indicates that plaintiff had been receiving follow-up care from Dr. Seibel at ECMC and appeared to be healing well (T. 177).

The initial Mental Health Assessment record indicates that plaintiff, who was then twenty-two years of age, had started using marijuana when she was eleven, was freebasing cocaine by the time she was seventeen, and had increased her usage of drugs in the last two years (T. 184). Plaintiff reported that her leg injuries were painful and she was apparently self-medicating with cocaine (T. 183). According to the assessment, plaintiff had only fair self-esteem, was wheel-chair bound and isolated (T. 180–83). Her feeling management was poor, her insight and judgment were fair, and her impulsive decision making was poor. *Id.*

LSCMHC's records further indicate that plaintiff has a legal history of prostitution, generally in exchange for drugs or for the money to buy drugs (T. 182, 233). Plaintiff reported being sexually abused as a child by her adoptive father and was involved in an abusive relationship for six years (T. 181). She currently has an order of protection from her estranged boyfriend but sees him occasionally to get drugs (T. 214–15). She is the mother of two children who were four years old and three months old at the time of the hearing. Both children were prenatally exposed to drugs. She also cares for her estranged boyfriend's twelve year old daughter (T. 199).

On June 30, 1992, plaintiff was treated in the emergency room at ECMC after she passed out at an automatic teller machine. She had fallen and hit her left side (T. 148–56). She was diagnosed with a urinary tract infection and treated with Septra (T. 148–49).

On July 23, 1992 plaintiff was again seen in the emergency room at ECMC. Her leg cast had become wet and was deteriorating (T. 143–47). Plaintiff denied any pain. X-rays taken at that time revealed that the rod and screws were in place. The cast was reapplied and plaintiff was told to use crutches and return to the clinic in two weeks (T. 143).

On August 22, 1992, plaintiff's cast was again changed at the ECMC emergency room after plaintiff complained that the cast was rubbing on her heel (37–41). She was instructed to follow-up with Dr. Seibel.

On September 23, 1992, plaintiff was examined by Dr. Seibel (T. 135, 165). In a letter to the Department of Social Services, written by Dr. Seibel on March 9, 1993, he indicates that September 23, 1992 was the last time he examined plaintiff (T. 165). There were no complications with plaintiff's kidney. The cast was removed and x-rays revealed that her leg fractures had healed. Plaintiff was able to walk, bearing full weight and was told she could return to work. Dr. Seibel discharged plaintiff at that time. *Id.*

On March 26, 1993 Dr. Kashin at LSCMHC filled out a disability assessment form from the Department of Social Services (166–72). The doctor noted that no psychological or psychiatric tests had been performed, yet the doctor checked the space under "Psychiatric Findings" indicating that

---

2. This attempt is noted in the record provided by Lake Shore Community Mental Health Center.

The records from Columbus Hospital are not a part of the administrative record.

plaintiff has no mental impairment (T. 167). It is not clear what Dr. Kashin based his findings on or if this was a mistake. Dr. Kashin further indicated that plaintiff had limited ability to lift and carry objects, and to push and/or pull, but did not indicate the extent of this limitation (T. 171). The doctor also noted that plaintiff could stand for up to two hours a day. Plaintiff's ability to sit was unlimited and the doctor knew of no other limitations. At the bottom of the form the doctor indicated that plaintiff was not limited in her ability to understand and remember "[b]ased on reports made by my client as advised by OB/GYN." It is unclear what this means and these "reports" are not a part of the record. *Id.*

In a letter dated June 30, 1993, Dr. Ida M. Campagna indicated that she had provided plaintiff with prenatal care and had delivered her baby (T. 188). Plaintiff had no physical impairments of which the doctor was aware although the doctor did not comment on plaintiff's drug use. Dr. Campagna opined that plaintiff was capable of working.

Meanwhile, plaintiff filed for disability insurance on April 24, 1992 (T. 40). The application was denied initially (T. 44–7) and upon reconsideration (T. 74–77). Plaintiff then requested a hearing which was held on September 22, 1993, before Administrative Law Judge ("ALJ") Nicholas Haragos (T. 192–240). Plaintiff testified at the hearing and was represented by Krista McDonald, a paralegal from Neighborhood Legal Services.

At the hearing plaintiff explained that she had taken college classes in computers, word processing, and accounting for a year (T. 201–3). She had left school to start her own day care center when she was hit by the car in 1992 (T. 206, 223). Plaintiff was not working at the time of the hearing due to her drug problem (T. 216).

Plaintiff testified that she was still attending drug counselling sessions at the LSCMHC, but her attendance is inconsistent because of drug use (T. 213, 217). Despite this program, plaintiff continues to drink alcohol two or three times a week (T. 224), use marijuana (two or three joints a week), and uses cocaine five or six days a week, "whenever it is available" (T. 214, 220). Plaintiff's friends and family will no longer associate with her because of her drug problem. Plaintiff's mother has reported plaintiff to the Department of Social Services twice but plaintiff is trying to keep her children in her home (T. 230–32).

Plaintiff explained that although her legs cause her extreme pain she is no longer seeing a doctor because she is under the influence of drugs so often she has trouble keeping her appointments (T. 216). She claims to have tried to stop using drugs, without success "because of the pain in [her] legs and [the fact that her] life isn't correct since the accident" (T. 221). The longest period of sobriety she could recall was one and one-half months in the latter part of her last pregnancy (T. 234).

Plaintiff testified that she has difficulty taking care of the cooking, cleaning and shopping. Her former boyfriend's twelve year old daughter, who is in plaintiff's care, helps her with these chores (T. 218–220). Plaintiff does not have a drivers license and uses public transportation (T. 200–1). She has trouble remembering things due to her drug problem. Carrying her children, who weigh fifty and fifteen pounds respectively, exacerbates her leg pain (T. 229).

Plaintiff stood up several time during the hearing due to discomfort in her legs (T. 202, 208, 216). She cried frequently, especially when testifying about her drug problem and her alienation from family and friends (T. 217, 220, 235).

On October 19, 1993, the ALJ found that plaintiff did not have a disability (T. 14–25). The ALJ's decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on March 4, 1994 (T. 3–4). This action followed.

### DISCUSSION

■ The parameter for judicial review by this court is well established. The district court will not conduct a *de novo* review of the Secretary's findings but, rather, "is limited to an assessment of whether the findings of fact are supported by substantial evidence; if they are supported by such evidence, they are conclusive." *Parker v. Harris,* 626 F.2d

225, 231 (2d Cir.1980) (citing 42 U.S.C. § 405(g) (1991)). Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relation Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Jones v. Sullivan,* 949 F.2d 57 (2d Cir.1991)). The Secretary's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. *Grey v. Heckler,* 721 F.2d 41, 44 (2d Cir.1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

The Social Security Act defines disability as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A) (1991). The Secretary has established a five-step process to evaluate disability:

1. An individual who is working and engaging in substantial gainful activity will not be found to be disabled regardless of medical findings;

2. An individual who does not have a "severe" impairment will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of disabled will be made without consideration of vocational factors;

4. If an individual is capable of performing work he or she has done in the past, a finding of not disabled must be made;

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual

functional capacity must be considered to determine if other work can be performed. 20 C.F.R. §§ 404.1520, 416.920 (1991).

■ The plaintiff bears the burden of establishing a prima facie case of disability. Plaintiff must show that she has not engaged in a substantial gainful activity and that her impairment is severe and prohibits her from returning to the type of work in which she was formerly engaged. *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *Parker v. Harris, supra,* 626 F.2d at 231. Once plaintiff has set forth her case, "the burden shifts to the Secretary to produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform considering not only [her] physical capability, but as well [her] age, [her] education, [her] experience and [her] training." *Parker v. Harris, supra,* 626 F.2d at 231 (citations and footnote omitted).

In this case, the ALJ determined that plaintiff has set forth a prima facie case as steps one through four above have been met. The ALJ found that plaintiff has not engaged in substantial gainful activity since April 24, 1992 (T. 20). He found that plaintiff's leg problems and drug abuse did, in fact, amount to a severe impairment although it did not meet or equal one of the listed impairments (T. 21). He further noted that plaintiff had no past relevant work experience. *Id.*

After making the above assessment, the ALJ turned to step five and evaluated plaintiff's residual functional capacity (RFC) and vocational abilities. In assessing plaintiff's residual functional capacity, the ALJ found as follows:

[Plaintiff] is ... physically limited to medium work. However, there is nothing in the record to convince the Administrative Law Judge that the claimant suffers from any other physical or mental impairment which significantly proscribes her capacity for the performance of medium work (T. 20).

The ALJ concluded that plaintiff could perform the full range of medium work.[3] This,

---

**3.** Medium work, defined a 20 C.F.R. § 416.967(c):

[I]nvolves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds.

in conjunction with her age, education, and work experience, led the ALJ to conclude that plaintiff is not disabled. *See* Rule 203.28.

Plaintiff argues that the ALJ erred when he 'failed to take into account plaintiff's non-exertional limitations stemming from drug addiction. It is the plaintiff's position that the ALJ's determination that plaintiff's drug use is "a willful life style choice rather than a disability" is not supported by substantial evidence (T. 20). Plaintiff contends that the Secretary was remiss in her duty to develop the administrative record evaluating plaintiff's substance abuse problem and that the Secretary should have requested a psychological evaluation of plaintiff before making a determination on the severity of her drug abuse.

■ A determination that an individual is an alcoholic or a drug addict does not, in and of itself, result in a finding of disability. *See* SSR 82–60. Rather, the Secretary is required to investigate the severity of the addiction. *Id.; Rutherford v. Schweiker,* 685 F.2d 60 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).[4] Substance addiction will be found to be disabling if it meets the listing in Appendix 1, 20 C.F.R. Pt. 404, Subpt. P § 12.09. Plaintiff does not dispute the Secretary's finding that her impairment does not meet or equal this listing.

■ However, it is well settled that even where the addiction does not meet or equal the severity listed in the Secretary's regulations, "chronic alcoholism [or substance abuse] can be disabling if it, alone or in combination with other causes, prevents a person from engaging in substantial gainful employment." *DeCarolis v. Secretary of Health and Human Services,* 724 F.Supp. 71, 74 (W.D.N.Y.1989) (Larimer, J.) (citing *Wolf*

*v. Secretary of Health and Human Services,* 612 F.Supp. 289, 290 (W.D.N.Y.1985) (Curtin, C.J.). Where there is an apparent relationship between the plaintiff's excessive use of drugs and the claim of disability, the relevant inquiry "is whether the claimant lost the voluntary ability to control [her] drinking [or use of drugs]." *Rutherford v. Schweiker, supra,* 685 F.2d at 62, *as quoted in Smith v. Sullivan,* 776 F.Supp. 107, 113 (E.D.N.Y. 1991).

■ Furthermore, in order to ensure that a claimant has a full and fair hearing, the Secretary "incurs a general obligation affirmatively to develop the record to ensure that all the necessary and relevant information is produced." *Ceballos v. Bowen,* 649 F.Supp. 693, 698 (S.D.N.Y.1986) (citing *Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751, 755 (2d Cir.1982)). This obligation remains with the Secretary even where, as here, the claimant is represented by counsel. *Id; Dozier v. Heckler,* 754 F.2d 274, 276 (8th Cir.1985).[5]

■ In fulfilling her obligation, the Secretary, "will develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [claimant] filed [his or her] application...." 20 C.F.R. § 416.912(d). This includes ensuring that all of the records from plaintiff's treating sources are produced and procuring an opinion or diagnosis of plaintiff's condition from those treating sources. *Williams v. Sullivan,* 1992 WL 135236 (E.D.N.Y. May 29, 1992); *Peed v. Sullivan,* 778 F.Supp. 1241, 1246 (E.D.N.Y.1991). When the information received from plaintiff's treating source is inadequate, the Secretary's regulations direct her to re-contact the medical source for supplementation or clarification of the information, unless to do so would be futile. 20 C.F.R. § 416.912(e)(1) & (2).[6]

---

4. Most of the law interpreting the Secretary's regulations relating to substance abuse address the issue of alcoholism. It is clear, however, that the analysis set forth in these cases is equally applicable to cases dealing with drug addiction.

5. Here, plaintiff was *pro se* at the initial and reconsideration levels of review. She was represented by counsel for the administrative hearing,

for her appeal to the Appeals Council and before the district court.

6. This regulation provides:
   (e) *Recontacting medical sources.* When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision. To

■ The Secretary also has the authority to order a consultative examination of plaintiff when the record evidence is scant and such an examination is necessary to make an accurate assessment of plaintiff's claim of disability. 20 C.F.R. §§ 416.912(f) & 416.919a(b);[7] *Dozier v. Heckler, supra,* 754 F.2d at 276 (failure of Secretary to order consultative examination where evidence in record is scant constitutes reversible error). The Secretary's Social Security Ruling, articulating her policy for evaluating drug addiction and alcoholism, also addresses the Secretary's duty to secure sufficient medical evidence through an additional examination if necessary:

Adequate information must be obtained to permit proper evaluation of the individual's impairment(s). . . . If sufficient evidence for a decision is not available . . . an additional medical examination is required. It may be necessary for this examination to be performed by an internist, neurologist, psychiatrist or other medical specialist, depending on the type of impairment(s) in question and the evidence which is needed.

SSR 82–60.

■ In the instant case, the Secretary concluded that "there is no evidence that [the plaintiff] has lost the ability to voluntarily control the use of drugs" (T. 18–19). This determination did not take into account the Secretary's affirmative duty to develop the record in evaluating plaintiff's substance abuse problem. It is clear that the record does not contain the necessary information to evaluate plaintiff's ability to control her drug use. This information is pivotal to a determination of plaintiff's claim of disability.

Conspicuously missing from the record in this case are evaluations from the two counselors at the Lake Shore Community Mental Health Center with whom plaintiff has been meeting. It would seem that these women are most capable of commenting on plaintiff's ability to voluntarily control her drug intake, as they are the individuals plaintiff has seen twice a week since May of 1992.

Although the ALJ commented on the absence of information from plaintiff's counselors, he appears to have been satisfied by the documents that were received from LSCMHC. This information is inadequate for several reasons.

First, the information provided is incomplete. The documents procured from LSCMHC include the initial assessment of plaintiff's physical and mental capabilities in May of 1992 and the disability assessment

7. 20 C.F.R. § 416.919a(b) states:

obtain the information we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from the medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques. We may do this by requesting copies of you medical source's records, a new report, or a more detailed report from your medical source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

(2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

*Situations requiring a consultative examination.* A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situation, including but not limited to the situation listed below, will normally require a consultative examination:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to do work, but the current severity of your impairment is not established.

filled out by Dr. Kashin in March of 1993. The documents do not include any progress notes or reports that might have been made during the eleven months of counselling sessions plaintiff attended by that time.

Moreover, none of the documents outline the course of treatment that has been recommended to plaintiff or whether she has followed any suggestions made.[8] Most importantly, the record does not contain any medical evidence from Dr. Kashin or others, on plaintiff's ability to control her use of drugs.

Finally, although the ALJ stated that the disability assessment completed by Dr. Kashin "indicates essentially no abnormalities of mental status," it also clearly indicates that LSCMHC never conducted a psychiatric or psychological review of plaintiff (T. 18). Absent a psychiatric or psychological evaluation of plaintiff, the basis for Dr. Kashin's assessment is questionable, as plaintiff testified that she only met Dr. Kashin a few times, "maybe twice" (T. 218). Furthermore, as noted above, the report itself is rife with ambiguities and, therefore, of limited utility (T. 167).

In the absence of the necessary clinical information, the ALJ attempted to substantiate his determination by pointing to certain facts in the record. For instance, the ALJ pointed to the fact that the plaintiff "continues in an abusive relationship in order to obtain drugs from her boyfriend and otherwise engages in prostitution in order to obtain money for drugs" (T. 18). Apparently the ALJ found that this course of action establishes volition on the part of the plaintiff. The ALJ also found that plaintiff's daily drug use despite the fact that she is raising young children, indicated extremely poor judgment, but judgment nonetheless.

These findings of fact are not supported by substantial evidence. It might just as easily be inferred from these facts that the plaintiff cannot control her drug use. The Secretary may not substitute her own opinion in the absence of an opinion from plaintiff's treating sources. *Peed v. Sullivan, supra,* 778 F.Supp. at 1247.

The record, as it stands, is incomplete and does not support the Secretary's findings. This case must be remanded to the Secretary for further development of the record regarding plaintiff's drug addiction.

The Secretary is directed on remand to solicit an evaluation of plaintiff's drug problem and her ability to control this problem from the counselors who directly treated plaintiff. The Secretary is also directed to request clarification of Dr. Kashin's report. Further, the Secretary is directed to request that a psychiatric evaluation of plaintiff be conducted. If LSCMHC is unwilling or unable to conduct the evaluation, the Secretary shall exercise her authority to secure such an examination from an· independent source.

Accordingly, the Secretary's motion is denied and this case is remanded to the Secretary for further proceedings consistent with this opinion.

### CONCLUSION

For the foregoing reasons, the Secretary's motion is denied and this case is remanded to the Secretary for further proceedings consistent with this opinion.

---

**8.** Parenthetically, it should be noted that despite these deficiencies, the ALJ somehow determined that "there is no evidence that the claimant has made an effort to follow the recommendations of her counselors and psychiatrist" (T. 20).